UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NANCY BIGDA PARENT,              )
            Plaintiff            )
                                 )
         v.                      ) C.A. No. 10-30055-MAP
                                 )
PRINCIPAL LIFE INSURANCE         )
COMPANY and CHECKERBOARD,        )
INC. LONG TERM DISABILITY        )
PLAN),                           )
            Defendant            )
                                 )

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM
AND PLAINTIFF'S MOTION FOR DISCOVERY
AND TO EXPAND THE JUDICIAL RECORD
(Dkt. Nos. 11 & 31)

February 3, 2011

PONSOR, D.J.

I. INTRODUCTION

Plaintiff Nancy Bigda Parent filed a complaint under the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1132, alleging that Defendants wrongfully terminated her disability benefits and seeking an award of attorney's fees and costs. Defendant Principal Life Insurance Company ("Principal") filed a counterclaim for constructive trust. Plaintiff now seeks to dismiss the counterclaim (Dkt. No.

11) and to conduct limited discovery (Dkt. No. 31).  For the reasons that follow, the court will deny both motions.

## II. BACKGROUND

Plaintiff is a former employee of Defendant Checkerboard, Inc.  Plaintiff alleges that she is disabled due to "damage to her hip and sarcoidosis[1] and other ailments and prescription medications that she takes to treat her physically disabling conditions."  (Dkt. No. 1, Compl. ¶ 12.)  From March 31, 2008, through May 12, 2008, Plaintiff received short-term disability benefits from Defendant Principal, which terminated the benefits after finding that neither Plaintiff's psychiatrist nor medical doctor had provided any "objective evidence of impairment." (Dkt. No. 9, Ex. 2.)

On June 8, 2008, Plaintiff sought long-term disability ("LTD") benefits from Defendant Principal, which were initially denied.  On July 16, 2009, Defendant Principal reversed its denial and awarded LTD benefits from June 30, 2008, through May 20, 2009, which it issued to Plaintiff in

---

[1] The primary symptom of sarcoidosis is swelling in the lymph nodes, lungs, liver, eyes, skin, and other tissues.

a lump sum on June 9, 2009. (Dkt. No. 9, Ex. 3.) The letter accompanying the LTD benefits award stated:

> Long Term Disability benefits are reduced by Other Income Sources, including Social Security benefits. . . . If you receive or begin to receive income from any of the listed Sources, your Long Term Disability benefits may be affected. . . . Please note that you are required to notify us of any Other Income Sources. Failure to report income from other sources may result in overpayment or termination of your disability claim.

(<u>Id.</u>)

Plaintiff also applied for Social Security Disability Income ("SSDI") benefits, which she was granted on November 10, 2009. The Social Security Administration found that she was entitled to disability benefits beginning in September 2008 and sent her a check for $31,987.00 on November 16, 2009, for the period from September 2008 through November 2009. (Dkt. No. 9, Ex. 6.) Plaintiff has been receiving SSDI benefits of approximately $2312.00 per month since that time. (<u>Id.</u>)

In the meantime, because Defendant Principal had awarded LTD benefits only through May 20, 2009, Plaintiff appealed the termination of the LTD benefits. Additionally,

and significantly, on October 2, 2009, one month before she learned of her SSDI award, Plaintiff signed a Reimbursement Agreement, in which she agreed to repay Defendant Principal any overpayment that might result if she were awarded SSDI benefits. (Dkt. No. 9, Ex. 5.) On January 12, 2010, having learned of the SSDI award, Defendant Principal sent a letter to Plaintiff's attorney seeking repayment of $28,400.67, which it stated was the amount that it had overpaid Plaintiff due to her receipt of SSDI benefits beginning in September 2008. (Dkt. No. 9, Ex. 7.)

On January 25, 2010, Defendant Principal denied Plaintiff's appeal of the denial of her LTD benefits. (Dkt. No. 39.) Plaintiff filed this action in March 2010, alleging that Defendant Principal's denial of LTD benefits was substantively wrongful and procedurally flawed. Plaintiff further alleged that she had exhausted her administrative remedies and requested that the court conduct a plenary proceeding in evaluating Defendant Principal's denial. In response, Defendant Principal counterclaimed,

seeking imposition of a constructive trust of $28,400.67,[2] an equitable lien on future payments until Plaintiff reimburses the funds, and an order for restitution plus prejudgment interest and attorney's fees.

### III. DISCUSSION

A. Motion to Dismiss Counterclaim.

Plaintiff seeks to dismiss Defendant Principal's counterclaim on the grounds that Defendant Principal has not provided a plausible basis for relief and that the restitution Defendant Principal seeks is barred by 42 U.S.C. § 407, which protects Social Security payments from being subject to legal process.

Like a complaint, a counterclaim is subject to dismissal if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the nonmoving party, the court determines that it "fails to state a claim upon which relief can be granted." Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005). See also Brown v. Latin Am. Music Co., 498 F.3d 18, 22 (1st Cir. 2010). To survive a motion to dismiss, the

---

[2] At the hearing on these motions, Defendant Principal's attorney admitted that Defendant Principal had miscalculated the amount and that it would likely be considerably less.

counterclaim must contain "sufficient factual matter" to state a claim for relief that is both actionable as a matter of law and "'plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Dismissal for failure to state a claim is appropriate if the [counterclaim] fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

1. Plausible Basis for Relief.

Plaintiff contends that Defendant Principal can identify no language under which Plaintiff would owe Defendant money or facts in support of its claim of overpayment, and that it has failed to identify which funds it seeks. Plaintiff's argument fails on all counts.

This court can conceive of no clearer language than that of the Reimbursement Agreement that Plaintiff signed on October 22, 2009, to wit, "I agree to repay Principal Life Insurance Company (Principal Life) within 30 days of the date the first money is received from social security." (Dkt. No. 9, Ex. 5.) Even were this language in some way

6

unclear, which it was not, it was actually the second notification to Plaintiff that she would be required to reimburse Defendant Principal for overpayment caused by receipt of SSDI benefits.  As noted above, Defendant Principal's July 16, 2009, letter to Plaintiff's attorney regarding its award of benefits for the period from June 30, 2008, through May 20, 2009, stated, "Long Term Disability benefits are reduced by Other Income Sources, including Social Security benefits."  (Dkt. No. 9, Ex. C, at 4.)  The letter further put Plaintiff on notice that she was required to notify Defendant if she received SSDI benefits and that "[f]ailure to report income from other sources may result in overpayment or termination of your disability claim."  (Id.)  Given that Defendant Principal has provided copies of all relevant contracts and paperwork and that Plaintiff does not dispute either that she signed the contracts or that she received the benefits, Defendant Principal has provided the factual support necessary for it to state this claim for relief.

As to the identification of funds, Plaintiff argues that Defendant Principal's failure to specifically identify the funds over which its seeks imposition of a constructive trust precludes it from bringing this claim.  Citing Great-West Life & Annuity Ins. Co. v. Knudson, Plaintiff contends

7

that, under ERISA, which allows insurers to recover only in equity and not at law, Defendant Principal cannot seek "to impose personal liability on [Plaintiff], but to restore to [Defendant Principal] particular funds or property in [Plaintiff's] possession." 534 U.S. 204, 213 (2002). This argument is foreclosed by the First Circuit's recent holding in the strikingly similar case of <u>Cusson v. Liberty Life Assur. Co.</u>, 592 F.3d 215 (2010), in which Liberty Life Assurance sought reimbursement of LTD benefits paid to the plaintiff after discovering that she had been simultaneously receiving SSDI benefits.

In <u>Cusson</u>, the First Circuit held that <u>Knudson</u> was inapposite, because in <u>Knudson</u> the funds at issue had been placed in a special trust under California law and were, accordingly, not in the beneficiary's possession. <u>Cusson</u>, 592 F.3d 231. Instead, pursuant to <u>Sereboff v. Mid Atlantic Medical Services Inc.</u>, 547 U.S. 356 (2006), the First Circuit concluded that "the contract between Cusson and Liberty put Cusson on notice that she would be required to reimburse Liberty for an amount equal to what she might get from Social Security." <u>Cusson</u>, 592 F.3d 231. Given that the SSDI benefit had been paid directly to Cusson, just as here it was paid directly to Plaintiff, the "counterclaim is an equitable claim and is allowed under 29 U.S.C. § 1132(a)

(3)." Id.

    2.   <u>The Counterclaim is Not Barred</u>.

Plaintiff accurately identifies 42 U.S.C. § 407 as protecting SSDI benefits from legal process. Notwithstanding Plaintiff's arguments to the contrary, however, the funds that Defendant Principal is seeking are not the SSDI benefits. As the First Circuit explained in <u>Cusson</u>, the insurer "seeks to recover in equity from funds [it] already paid under the LTD plan. . . . Although the amount in question happens to be the same as the amount of [Plaintiff's] retroactive SSDI benefits, the funds Liberty is targeting do not come from SSDI." <u>Id.</u> at 232. The same is true of Defendant Principal's counterclaim here, and the court will, accordingly, not dismiss it.

    B.   <u>Motion for Discovery</u>.

Plaintiff has moved to obtain limited "conflict-based" pre-trial discovery and to expand the scope of the judicial record on the grounds that the record "contains strong evidence of conflict of interest that reaches far beyond the structural conflict of interest of an insurer paying benefits from its own assets." (Dkt. No. 32, Pl.'s Mem. at 2.) Plaintiff's primary evidence of this conflict is Defendant Principal's requirement that she apply for SSDI benefits and, once they were granted, its subsequent denial

9

of LTD benefits.  Plaintiff seeks discovery regarding the following issues: the frequency with which Defendant Principal denies or terminates disability claims where a beneficiary has been awarded SSDI benefits; whether the manner and frequency with which employees and consultants are utilized and compensated provides evidence of bias; the compensation structure of employee-reviewers and alleged independent reviewers; and information regarding third-party-vendor relationships with Defendant Principal to determine whether independent reviewers are actually independent.

This court has previously held that "the scope of a court's review of an ERISA benefit denial is generally limited to the administrative record . . . 'This is true as to discovery as well.' . . . [T]he issue is simply whether the court believes there is sufficient evidence to support a finding of disability."  Estate of Jajuga v. Prudential Ins. Co. of Am., 2010 U.S. Dist. LEXIS 107889 (D. Mass. Oct. 7, 2010) (quoting Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519-20 (1st Cir. 2005)).  As the First Circuit has made abundantly clear, the focus of the court's review of ERISA claims is the record, and "some very good reason is needed to overcome that preference."  Orndorf, 404 F.3d at 519.  See also Denmark v. Liberty Life Assur. Co., 566 F.3d

1, 10 (1st Cir. 2009) ("ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator. . . . '[S]ome very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator.'" (quoting Liston v. Unum Corp. Officer Sev. Plan, 330 F.3d 19, 23 (1st Cir. 2003)); Liston, 330 F.3d at 24 ("Even where de novo review exists under ERISA, it is at least doubtful that courts should be in a hurry to consider evidence or claims not presented to the plan administrator.").

Plaintiff has provided no "good reason" for the court to set aside the First Circuit's clear preference and allow discovery. Plaintiff's reliance on McCormick v. Metropolitan Life Ins. Co., in which this court refused to allow the defendant to "wish away its obligations under the Social Security Assistance Program" is unavailing. 514 F. Supp. 2d 158, 167 (D. Mass. 2007). In McCormick, the insurer had failed to assist the beneficiary, as it promised it would, in applying for SSDI benefits and then sought repayment of the benefits that it estimated the insured would have received had he applied. Given that here it was Plaintiff who failed to notify Defendant Principal of the benefits that she had in fact received, the court will not permit discovery to expand the scope of the judicial record.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss Counterclaim (Dkt. No. 11) and Motion for Discovery (Dkt. No. 31) are hereby DENIED.

Since argument on these motions, Defendant Checkerboard, Inc. has filed a motion to dismiss (Dkt. 40). The clerk will set this motion down for hearing and, further, set the case for a pretrial conference at the same time. Counsel for all parties will be present at the scheduled time.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge